```
                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF OHIO
                         WESTERN DIVISION
```

DAVID MUES,                      :        NO. 1:05-CV-00505
                                 :
    Plaintiff,                   :
                                 :
   v.                            :        **OPINION AND ORDER**
                                 :
GENERAL REVENUE CORP.,           :
                                 :
    Defendant.                   :

       This matter is before the Court on Defendant's Motion for Summary Judgment (doc. 13), Plaintiff's Memorandum in Opposition (doc. 19), and Defendant's Reply (doc. 24).  The Court held a hearing on this matter on December 13, 2006, and later set this matter for mediation on April 12, 2007 (doc. 27).  As mediation did not resolve the dispute, the Court now finds it ripe for review.  For the reasons indicated herein, the Court GRANTS Defendant's Motion and dismisses this matter from the Court's docket.

**I.  BACKGROUND**

       Starting on July 9, 2001, Plaintiff worked as a student loan debt "recovery specialist" for Defendant General Revenue Corporation ("GRC"), a debt collection agency which is a subsidiary of "Sallie Mae" (docs. 13, 19). Plaintiff proffers evidence that he performed his job well, and exceeded expectations prior to November 2002, at which time he took medical leave pursuant to the Family and Medical Leave Act, ("FMLA"), 29 U.S.C. § 2001 <u>et</u> <u>seq.</u>,

to undergo intestinal surgery (doc. 19). Plaintiff returned to work from the surgery after only a month, after which time he alleges several managers made comments to the effect that they perceived him as disabled (Id.). The GRC's Director of Operations, Jeff Schnell, asked Plaintiff, "Where's the old Dave at?" and Jennifer Niehaus, Section Manager asked him, "When are you going to get back to what you once did" (Id.). Plaintiff alleges that when he returned from his first medical leave, in December 2002, his unit supervisor, Brandy Conarroe, began a campaign of harassing "coaching sessions," some of which he argues took him away from his duties and caused him to barely miss his goals (Id.).

Plaintiff underwent a second surgery in January 2003, and subsequently took about another month of FMLA leave (Id.). He alleges upon his return that Conarroe continued to subject him to excessive coaching (Id.). Plaintiff alleges that he was also unfairly treated with regard to attendance standards, as attendance points stayed on his record longer than they should have according to policy (Id.). Plaintiff alleges Conarroe disciplined him for conducting an 82-minute phone call in the pursuit of a promise to pay, when he was trained to keep a debtor on the phone as long as necessary to obtain a payment, which he did (Id.). Conarroe also warned Plaintiff on August 6, 2003, for allegedly barely missing his goals in June and July 2003, which Plaintiff argues he missed due to Conarroe's excessive and distracting coaching sessions

2

(Id.). Plaintiff argues that Defendant refused to accommodate his need for breaks after his surgery, doing "absolutely nothing to prorate his goals" (Id.). Plaintiff further argues that Defendant had the power to assign particular accounts to particular individuals, and it assigned a large number of the most difficult accounts to him, while assigning better accounts to younger employees (Id.). Finally, Plaintiff alleges he challenged GRC's alleged illegal debt collection practices at some point during his employment (Id.).

Plaintiff took a third leave beginning in August 2003, due to anxiety he felt in the pressure of his position, and what he viewed as a second unfounded warning from Conarroe (Id.). Plaintiff's doctor indicated the leave was necessary, held the opinion that Plaintiff had no definite return to work date, and opined that Plaintiff could have returned to work under a different supervisor (Id.).

Defendant terminated Plaintiff's employment on November 15, 2003, advising him that such termination was due to his failure to return to work after the exhaustion of his leave on November 13, 2003 (doc. 24). Plaintiff filed his Complaint on July 27, 2005, alleging that Defendant fired him in retaliation for his exercise of his FMLA rights, in violation of federal and state disability discrimination law, federal and state age discrimination law, the Employee Retirement Income Security Act, 29 U.S.C. § 1140, and in

3

breach of Ohio Public Policy (doc. 1). Plaintiff's public policy claim is grounded in the theory that he was fired for challenging allegedly illegal debt collection practices (Id.).

According to Defendant, Plaintiff exercised twelve weeks of FMLA leave over three separate periods between November 2002 and August of 2003 (doc. 24). After Plaintiff exhausted his FMLA leave, Defendant granted him twelve additional weeks of discretionary leave (Id.). Defendant advised Plaintiff on September 24, 2003, that his discretionary leave would expire November 12, 2003 (Id.). Plaintiff neither returned to work on November 13, 2003, nor advised Defendant that he was not returning to work (Id.). In Defendant's view, despite Plaintiff's various allegations and theories of liability, this case is really a rather simple matter revolving around Plaintiff's failure to return to work after he exhausted not only his FMLA leave, but also extra leave that it granted him in its discretion (Id.). According to Defendant, the comments made by Plaintiff's managers at most indicated a concern about Plaintiff's decreased performance; Plaintiff is not entitled to disability accommodations of "pro-rated" goals or a specific supervisor; and he fails to proffer evidence that he was replaced by a younger employee (Id.). Defendant argues it instituted a new coaching policy during Plaintiff's absence and all similarly-situated employees received the same treatment of which Plaintiff complains (Id.). Finally

4

Defendant argues that Plaintiff's alleged challenge of an illegal debt-collection practice was also the subject of other employee complaints, and Plaintiff fails to proffer evidence that any other employees were terminated or dismissed on the basis of such complaints (Id.). For all of these reasons, Defendant argues Plaintiff's Complaint fails and it is entitled to summary judgment as a matter of law (Id.).

**II. APPLICABLE LEGAL STANDARD**

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992) (per curiam). In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986) (internal quotation marks

omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled. First, "a party seeking summary judgment. . . bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact [.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex, 477 U.S. at 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an

"alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-248 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-340 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) (internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F.2d

7

1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See Matsushita, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-455 (6th Cir. 1991).

**III. ANALYSIS**

At the December 13, 2006 hearing it became clear to the Court that there is no genuine dispute as to the material fact that Plaintiff exhausted his FMLA leave, as well as the extra leave granted to him by Defendant, and then failed to report to work. Under this scenario, the Court concludes that Defendant acted within its rights, having a legitimate non-discriminatory reason to terminate Plaintiff's employment, and it is entitled to judgment as a matter of law.

8

The Court will address Plaintiff's various claims seriatum:

**A. Plaintiff's FMLA Retaliation Claim**

To establish a <u>prima facie</u> case for retaliation, Plaintiff must show 1) he availed himself of a protected FMLA right, 2) he was adversely affected by an employment decision, and 3) there was a causal connection between the exercise of a FMLA right and the adverse action. <u>Skrjanc v. Great Lakes Power Serv. Co.</u>, 272 F.3d 309, 314 (6th Cir. 2001). Should Plaintiff establish his <u>prima facie</u> case, then the burden-shifting model of <u>McDonnell Douglass v. Green</u>, 411 U.S. 792 (1973), applies such that Defendant must articulate a legitimate non-discriminatory reason for the employment decision, which Plaintiff can attack as pretext.

Plaintiff argues he has established a <u>prima facie</u> case based on the temporal proximity of his termination to the time when he exercised his FMLA rights, the increased coaching and discipline that he experienced, and the alleged inappropriate comments of his superiors at GRC. The Court finds, however, that Plaintiff has failed to establish a <u>prima facie</u> case as he has not demonstrated a causal connection between the exercise of his FMLA leave and his termination.

Plaintiff's principle theory is that he was singled out for "coaching" sessions upon his return to work after his first FMLA leave, but Defendant offers evidence that it instituted a new

9

policy during Plaintiff's absence to help its employees be better collectors and reach their goals. Defendant argues that though in June 2003 Plaintiff received the most coaching sessions of any other employee--twenty-one--two others received 18 each, another 12, and another 11 (doc. 13). Defendant also proffers testimony of Plaintiff's former supervisor Brandy Conarroe, who is no longer employed by the company (Id.). Conarroe testified that company policy changed so as to require more "coaching," that no one directed her to "coach" Plaintiff out, and that although employees viewed the coaching as disciplinary, it was only intended to improve performance (Id.). Defendant argued at the hearing that five people in Plaintiff's unit received more than two coaching sessions a week in June 2003, during the relevant time-period, such that the evidence shows it did not single Plaintiff out.

Plaintiff argued in response that another employee in Plaintiff's unit, Marie Briggs, only received a total of ten coaching sessions during her entire two-and-a-half year employment with Defendant. This evidence only shows that Briggs did not need the sort of coaching that Defendant gave to her fellow employees in differing degrees. Plaintiff in no way proffered evidence that Ms. Brigg's performance equated that of his own. Absent such evidence, and in the light of Defendant's strong evidence showing it instituted a policy that affected all the employees, the Court cannot conclude that Defendant subjected Plaintiff to coaching on

10

a different basis than Briggs or any other employee.

Aside from the coaching he received, Plaintiff argued at the hearing and in the briefing that Defendant subjected him to unfair verbal and written warnings, as well as inappropriate comments. Defendant argued that Plaintiff is unable to refute that he failed to meet specific production standards. Indeed at the hearing, Plaintiff argued that his goals should have been "pro-rated," to accommodate him after his medical leaves. The Court finds no genuine dispute that Plaintiff's performance declined and that Defendant therefore had a proper basis to both warn him, and to verbally ask him when he would get back to what he used to do. Although Plaintiff characterizes the comment of Jeff Schnell, "Where's the old Dave at?" as unseemly, the deposition evidence shows that Schnell and Plaintiff had only two brief conversations during Plaintiff's employment. The Court concludes that such comments, as well as those of Jennifer Niehaus, were isolated and do not demonstrate a campaign of harassment in retaliation for taking FMLA leave.

At the hearing, Plaintiff argued that Plaintiff's work environment was completely different upon his return from FMLA leave. The Court finds that this may indeed be true. However, the Court concludes that it is well within the realm of Defendant's business judgment to coach its employees toward more efficient performance.

11

Finally, even should the Court have erred in finding that Plaintiff has failed to establish his prima facie case, the Court is satisfied that Defendants have proffered a legitimate non-discriminatory reason for his termination. Plaintiff did not show up for work at the end of his leave. Attendance is an integral part of any job, and in other cases before this Court, the Court has found failure to return to work at the end of one's leave dispositive. Adams v. Bway Corp., No. 1:04-CV-00670, 2006 U.S. Dist. LEXIS 74085, at *11 (S.D. Ohio, October 11, 2006).

**B. Plaintiff's Age Discrimination Claim**

Plaintiff argues he meets his prima facie case, as he is in the protected class, he was objectively qualified consistent with Wexler v. White's Fine Furniture, Inc., 317 F. 3d 564 (6th Cir. 2003), he suffered an adverse employment action, and he was replaced by a twenty-six year old. Defendant argues it has three out of four other employees older than forty in the "cohort unit," and they are still with the company. At the hearing, Defendant argued Plaintiff was not really replaced by the younger employee because it hired the younger employee before it terminated Plaintiff. Defendant argues even if Plaintiff establishes his prima facie case, he has not been able to establish that its legitimate non-discriminatory reason for terminating him is pretext.

The Court rejects Defendant's argument concerning the

12

twenty-six-year old, because a company could hire a younger replacement before terminating an older employee. The question is whether the essential job functions of the older employee are assumed by the younger replacement. In any event, the Court finds Defendant's argument well-taken concerning its legitimate non-discriminatory reason for terminating Plaintiff, as detailed above in relation to the FMLA-retaliation claim. Under the same reasoning, therefore, even if Plaintiff could establish a <u>prima facie</u> case of age discrimination, he fails to show that Defendant's proffered non-discriminatory reason is pretext. As the same evidentiary framework applies to discrimination claims brought under the ADEA, and discrimination claims brought under Ohio state law, <u>Allen v. Ethicon, Inc.</u>, 919 F. Supp. 1093, 1098 (S.D. Ohio 1996), the Court concludes that both Plaintiff's state and federal age discrimination claims fail as a matter of law.

### C. Plaintiff's ERISA Claim

Plaintiff has no direct evidence, but alleges that under the applicable burden shifting approach, the temporal proximity between Defendant's learning of his severe mental illness and the decision to terminate him is sufficiently close to demonstrate that Defendant terminated him so as to interfere with his ERISA rights and to save money. In response, citing <u>Humphreys v. Bellaire Corp.</u>, 966 F.2d 1037, 1043 (6th Cir. 1992), Defendant argues that Plaintiff must do more than prove monetary savings for his

employer, but must show Defendant had a purpose, or specific intent, to violate ERISA (doc. 13). In fact, argues Defendant, when Plaintiff's doctor informed it that Plaintiff "suffers from major depression and anxiety", the doctor also indicated in the same document that Plaintiff "would be able to return to a full schedule after 9/8/03" (Id.). Based on the doctor's opinion, Defendant argues, it could not have viewed Plaintiff as disabled, and its legitimate nondiscriminatory reason for his discharge is unrebutted. The Court agrees, and concludes that Plaintiff's ERISA claim is based on unsubstantiated allegations.

### D. Plaintiff's ADA Claim

The Americans with Disabilities Act ("ADA") was enacted to provide a "clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The ADA provides that no covered employer shall discriminate against "a qualified individual with a disability because of the disability of such individual" in any of the "terms, conditions [or] privileges of employment." 42 U.S.C. § 12112(a). In order to establish a prima facie case of disability discrimination, a plaintiff must show that (1) he is "disabled" as contemplated by the ADA; (2) he is otherwise qualified for the position, with or without reasonable accommodations for his disability; and (3) he suffered an adverse employment decision as a result of this disability. See, e.g.,

14

Mahon v. Crowell, 295 F.3d 585, 589 (6th Cir. 2003); Monette v. Electronic Data Sys. Corp., 90 F.3d at 1178. Should Plaintiff fail to establish a factual dispute as to any one of these elements of his prima facie case, summary judgment would be warranted in Defendant's favor. Monette, 90 F.3d at 1185-86 ("If the plaintiff fails to establish a predicate fact necessary to create the presumption of unlawful intent,...the 'burden' never shifts to the defendant."). Merely having a physical or mental impairment does not render one disabled under the ADA. MX Group, Inc. V. City of Covington, 293 F.3d 326, 337 (6th Cir. 2002). Rather, the Act defines a disability as any of the following:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). "'Major' in the phrase 'major life activities' means important...and thus refers to those activities that are of central importance to daily life;" the accompanying regulations and interpreting federal courts have determined that the term includes performing manual tasks, caring for oneself, walking, seeing, hearing, speaking, breathing, learning, and working. 29 C.F.R. 1630.2(i). The question of whether a Plaintiff is regarded as having such an impairment, under the third prong of the statute, ordinarily is not one to be decided on summary

15

judgment, as it involves a determination of state of mind that is more appropriate for the jury than for the judge. Ross v. Campbell Soup Co., 237 F. 3d 701, 709 (6th Cir. 2001).

Once a Plaintiff establishes a prima facie case of disability discrimination, Defendant must offer a legitimate nondiscriminatory reason for its adverse action. If the employer satisfies this burden, then Plaintiff must produce evidence showing the proffered explanation is pretextual. Hendrick v. Western Reserve Care System, 355 F.3d 444, 452-453 (6th Cir. 2004). The same standards applicable to Plaintiff's ADA claim apply to his claims under Ohio disability law, O.R.C. § 4112.02(A). City of Columbus Civil Serv. Commission v. McGlone, 82 Ohio St.3d 569 (1998).

Plaintiff's ADA claim is premised on the theories that Defendant failed to accommodate his disability when it 1) failed to take into account his need to leave his desk after surgery, and 2) when it did nothing to explore accommodations that would allow him to return in November 2003. Plaintiff argues Defendant is charged with a duty to enter into an interactive process in determining required accommodations, which Defendant here failed to do. Plaintiff further argues that litigants with mental illness have a low burden in establishing they have requested a reasonable accommodation, such that Plaintiff's requests to transfer to another unit, away from Conarroe's constant coaching, is evidence

16

that Defendant completely failed to accommodate Plaintiff.

Defendant responds that Plaintiff is not disabled, that he cannot establish even a prima facie case of disability discrimination, and that a request for an indefinite leave of absence is not a reasonable accommodation (doc. 13, citing Wood v. Green, 323 F.3d 1309 (11th Cir. 2003). Defendant argued at the hearing that there is no record that Plaintiff suffered from an impairment that substantially limited a major life activity, or that Defendant perceived him as disabled. Citing Weiler v. Household Finance Corp., 101 F.3d 519 (7th Cir. 1996), Defendant further argued that Plaintiff cannot claim he is substantially limited in the major life activity of working for the reason that he has anxiety and stress under a particular supervisor. As for Plaintiff's claim to entitlement to pro-rated goals, Defendant responds that lowering of performance goals is not a reasonable accommodation (doc. 24, citing Milton v. Scrivener, Inc., 53 F.3d 1118, 1124 (10th Cir. 1995)(altering or reducing production standards is not a reasonable accommodation under the ADA)). Finally, Defendant argued that it provided the only accommodation that Plaintiff ever formally requested--time to get up and walk around during his shift.

Having reviewed this matter, the Court finds Defendant's position well-taken. The Court does not find that Plaintiff qualifies as disabled, nor evidence that Defendant perceived him as

17

such. However, the Court bases its conclusion that Plaintiff's ADA claim fails on the record evidence that Defendant provided every reasonable accommodation requested, and the remaining accommodations to which Plaintiff claims entitlement are simply unreasonable. For this reason, both Plaintiff's state and federal disability claims fail.

    **E. Plaintiff's Ohio Public Policy Claim**

Plaintiff argues that his Ohio public policy claim is grounded in the fact that he made complaints about alleged unfair debt collection practices, for which Defendant retaliated with his termination. Defendant responds that according to Plaintiff's deposition testimony, his discussion with his supervisor about the alleged practices took place during a "coaching" session on July 7, 2003, more than four months prior to Plaintiff's termination. During those four months, Defendant granted Plaintiff twelve weeks of discretionary leave. Defendant points out that it would not have granted Plaintiff leave had it intended to fire him for his complaints, it would have just fired him. In addition, Defendant argued at the hearing that other employees complained similarly about the alleged unfair practices, and no record evidence exists that Defendant disciplined or terminated any of those other employees. Finally, Defendant argues under the applicable test in <u>Painter v. Graley</u>, 70 Ohio St. 3d 377 (1994), Plaintiff cannot establish that Defendant lacked an overriding legitimate business

justification for his dismissal.  The Court agrees that Defendant had an overriding legitimate business justification for Plaintiff's dismissal, Plaintiff's failure to report to work after November 13, 2003, such that Plaintiff's public policy claim fails as a matter of law.

**IV. CONCLUSION**

For the reasons indicated herein, the Court finds no dispute as to the material fact that Plaintiff failed to report to work upon the expiration of his FMLA and discretionary leave.  Such failure is an unrebutted non-discriminatory justification for Defendant's action in terminating Plaintiff.  Accordingly, the Court finds no basis for Plaintiff's Complaint that Defendant fired him in retaliation for his exercise of his FMLA rights, in violation of federal and state disability discrimination law, in violation of federal and state age discrimination law, or in violation of Ohio public policy.  The Court further finds Plaintiff's ERISA claim unsubstantiated.

Accordingly, the Court GRANTS  Defendant's Motion for Summary Judgment (doc. 13), and DISMISSES this matter from the Court's docket.


SO ORDERED.

Dated: August 1, 2007            /s/ S. Arthur Spiegel
                                 S. Arthur Spiegel

United States Senior District Judge

20